IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES L. BURGETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-cv-0816-DGK-SSA |
| | ) | |
| LELAND DUDEK, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT SUMMARY JUDGMENT**

This lawsuit arises from pro se Plaintiff Charles Burgett's ("Burgett) employment with the Social Security Administration ("SSA"). Burgett contends he was not hired for a Debtor Contact Representative position because of his race, sex, and in retaliation for previously engaging in equal employment opportunity ("EEO") protected activity. Defendant denies the allegations. Defendant argues it declined to hire Burgett because it had previously terminated Burgett from a different position at the SSA for performance issues.

Now before the Court is Defendant's Motion for Summary Judgment. ECF No. 23. Because Defendant has demonstrated it is entitled to summary judgment on all of Burgett's claims, the motion is GRANTED.

**Standard**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

court makes this determination by viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).

## Material Undisputed Facts

The material undisputed facts are as follows.[1]

**A.    Burgett's brief employment with the Social Security Administration in 2016.**

On May 1, 2016, Defendant hired Burgett, an African American male,[2] as a probationary employee at the SSA's Kansas City, Missouri, Mid America Payment Service Center. Burgett's appointment was subject to completion of a one-year initial probationary period that would conclude on May 1, 2017.

At the SSA, an employee's probationary period is the last step in the examination process. During a probationary period of employment, SSA supervisors are tasked with continually evaluating the work performance and conduct of a probationary employee. If an employee's work performance or conduct fails to demonstrate fitness or qualifications for continued employment, he or she is to be terminated. If a probationary employee is terminated, a supervisor must provide

---

[1] The Court has limited these facts to those that are undisputed and material to the pending summary judgment motion. Excluded are legal conclusions, argument presented as fact, and proposed facts not properly supported by admissible evidence. The Court has also included inferences from undisputed material facts and facts not controverted properly. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

[2] Plaintiff has stated that he considers the use of the term "African American" to be a demonstration of "arrogance and racism," and he prefers the designation of "African." Because the relevant case law and underlying EEO documents generally use the descriptor "African American," the Court will use the term "African American" in this order. The Court emphasizes it is not doing so to disparage Plaintiff in any way but for consistency with reported precedent.

the rationale supporting the decision, e.g., poor work performance, lack of aptitude or cooperativeness, undesirable suitability characteristics evidenced by his or her activities in the workplace.

After being hired by the SSA, Burgett was assigned to "CSR Class 16-1." The first line supervisor for CSR Class 16-1 was Manager Class Leader Monica Hawkins ("Hawkins"), an African American female. Hawkins' supervisor was Training Module Manager Bryon Harris ("Harris"), an African American male.

Burgett's probationary employment with the SSA ended on November 30, 2016, when he was terminated after seven months while he was still in his probationary period. More specifically, on November 30, 2016, Harris presented Burgett with a Notice of Termination During Probationary Period. The notice explained that a probationary employee like Burgett could be terminated based on: (1) performance ("unacceptable progress towards qualifying for retention beyond the probationary period") or (2) conduct ("demonstrating an unsatisfactory attitude toward established agency rules and regulations"). With regard to Burgett's performance, the Notice stated that:

> • Burgett's work showed an overall unfamiliarity with the SSA's commitment to high-quality customer service and stewardship of the agency's programs.
>
> • Burgett did not demonstrate an understanding of the responsibility the SSA's employees have to the public.
>
> • Despite extensive assistance, Burgett was provided within the training environment, his accuracy and level of production did not progress to an acceptable level. At Burgett's last performance interview, his daily average case production through October 14, 2016, was 1.26 cases per day with an accuracy of 87.50%. His daily average case production through November 28, 2016, was 2.15 cases per day with an accuracy of 61.11%.

Harris determined that Burgett had not demonstrated an ability to retain and apply material provided during his classroom training and had not demonstrated progress towards independent completion of work. With regard to Burgett's conduct, the Notice stated that:

> • Burgett had shown an unsatisfactory attitude towards agency rules and regulations and had engaged in unacceptable conduct on the job.
>
> • Specifically, on September 27, 2016, Burgett received an official reprimand 3 for failure to follow a management directive regarding disposition of related cases on the same Social Security number.
>
> • In addition, despite repeated instruction and direction, Burgett refused to comply with the rebuttal process to challenge reviewed cases.

Burgett believes his production was sufficient and did not merit termination.

Following Burgett's 2016 termination and the SSA's failure to re-hire him 2018, Burgett pursued discrimination and retaliation claims in federal court against the SSA asserting, as he does here, race/sex discrimination, race discrimination, sex discrimination, and retaliation. *Burgett v. Kijakazi*, Case No. 20-00036-CV-W-DGK (W.D. Mo.) ("Burgett I"), Am. Compl., ECF No. 10.

On September 26, 2022, the Court granted the SSA summary judgment on all of Burgett's claims in that case. *Burgett v. Kijakazi*, 2022 WL 4468622, slip op. (W.D. Mo. Sept. 26, 2022). On August 1, 2023, the Eighth Circuit affirmed. *Burgett v. Kijakazi*, 2023 WL 4881472, at *1 (8th Cir. Aug. 1, 2023).

**B.     Burgett's non-selection by the SSA in 2020 as a Debt Contact Representative.**

In June of 2020, SSA issued Announcement Number SK10844519DH on www.USAJobs.gov seeking to fill positions for Debt Contact Representatives at SSA's Mid-America Program Service Center, Debt Management Section, in the Richard Bolling Federal Building in Kansas City, Missouri. Burgett applied on June 22, 2020.

4

Case 4:23-cv-00816-DGK     Document 29     Filed 08/04/25     Page 4 of 10

Shawn Lindsey, a Management Support Specialist with SSA, was one of the panelists interviewing candidates for the Debt Contact Representative positions. She recalled that Burgett's interview was "ok." Following the interviews, the interview panelists rated the candidates and forwarded the rating to SSA's DMS Section Chief. Burgett was one of eighteen candidates tentatively selected for a Debt Contact Representative position.

Job offers at SSA are tentative offers conditioned on a favorable suitability pre-screening. As an agency with delegated authority from OPM to perform suitability pre-screening, SSA is required to follow the criteria contained in 5 C.F.R. § 731.202.

Tim Hunter ("Hunter"), an Employee/Labor Relations Specialist at SSA, had the duty to complete a suitability pre-screening of applicants that have received tentative offers and thereafter provide the results of his analysis and conclusions to the Director of the Center for Human Resources. Hunter's screening determined that Burgett had "engaged in misconduct in prior employment." Specifically, he had "previously worked for the agency [and as] an employee of the agency, [Burgett had] engaged in repeated, serious misconduct that resulted in formal discipline [and Burgett] was terminated by the agency during his probationary for both unsuccessful performance and repeated, serious misconduct." Hunter recommended Burgett's offer of employment be rescinded. In making his suitability pre-screening analysis, Mr. Hunter did not know Burgett's race or his prior EEO activity.

Hunter forwarded his analysis and recommendation to Angela Ochoa ("Ochoa"), Director of the Center for Human Resources. Ochoa concurred in the recommendation and forwarded it to Daniel Harper ("Harper"), the SSA Staffing Specialist assigned to the Debt Contact Representative positions under Announcement Number SK10844519DH. Harper's role was

5

Case 4:23-cv-00816-DGK   Document 29   Filed 08/04/25   Page 5 of 10

limited to issuing the Stored List of Candidates and Certificate of Eligibles and contacting the candidates after SSA management made selections.

On October 20, 2020, Harper sent Burgett the following email:

> This is in reference to your tentative offer of employment with the Social Security Administration as a Contact Representative (Debt Contact Representative). Your offer of employment was contingent upon successful completion of a suitability/security background screening. You provided us the OF 306 – Declaration for Federal Employment on October 06, 2020. The results of the suitability/security background were unfavorable and were contrary to the mission of the Social Security Administration. Due to the unfavorable results, the tentative offer extended to you on September 30, 2020, is rescinded effective immediately.

Harper was not aware of Burgett's race, sex, or prior EEO activity.

That same day, Burgett initiated informal EEO counseling with SSA and, after counseling proved ineffective, he filed a Formal Equal Employment Opportunity (EEO) Complaint of Discrimination alleging discrimination based on race/sex and retaliation.

## Discussion

The Complaint, ECF No. 5, brings claims for race-plus-sex discrimination (Count I),[3] race discrimination (Count II), sex discrimination (Count III), and retaliation (Count IV) for failing to rehire Burgett in 2020. Defendant SSA moves for summary judgment on all claims. For the following reasons, the motion is GRANTED.

---

[3] "Race-plus-sex" theory claims are generally accepted under Title VII. *See, e.g., Daniels v. Trad. Log. & Cart.*, LLC, 2021 WL 5283301, at *3 n.2 (W.D. Mo. Nov. 12, 2021) (Title VII "does not bar separate claims for race discrimination and for sex-plus-race discrimination"). Race-plus-sex claims are subject to the same *McDonnell Douglas* test as separate claims of race discrimination and sex discrimination. *See, e.g., Burgett v. Yellen*, 2024 WL 3503045, at *1, 5 (W.D. Mo. Mar. 25, 2024).
.

### A. Plaintiff cannot establish a prima facie case for any of these claims.

In cases such as this one, where the plaintiff has no direct evidence of discrimination,[4] courts apply a three-step burden shifting analysis initially set forth in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973). *Main v. Ozark Health, Inc.*, 959 F.3d 319, 324 (8th Cir. 2020). Under this analysis, a plaintiff must first establish a prima facie case. *Id*. If plaintiff can do so then, the analysis proceeds to step two. *Id*. Here, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. At step three the burden shifts back to the plaintiff to show that the employer's reason(s) were pretextual. *Id*.

The elements of a prima facie case for race-plus-sex, race, and sex discrimination for an alleged failure-to-re-hire claim under Title VII are: (1) the plaintiff is a member of a protected group; (2) he applied for an available position; (3) he was qualified for the position; (4) he was not hired; and (5) the non-selection was causally linked to his membership in a protected group, usually shown by a similarly situated individual who is not part of the protected group being hired instead. *Farver v. McCarthy*, 931 F.3d 808, 812 (8th Cir. 2019). The elements of a retaliation claim are similar. The plaintiff must establish: (1) he previously engaged in statutorily protected activity; (2) the employer took an employment action (i.e., refusal to rehire) that a reasonable employee would have found to be materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 805 (8th Cir. 2019). In this case, Burgett cannot satisfy the causation element for any of his claims. That is, he cannot show his non-selection was linked to membership in a protected group (for his first three claims) or for engaging in protected conduct (for his fourth claim). On the contrary, the record demonstrates he was not hired because SSA hiring officials deemed the fact that he had

---

[4] By applying the *McDonnell Douglas* burden-shifting framework to this case, Burgett appears to agree with Defendant that this framework should apply to this case. Opp'n at 14, ECF No. 27.

previously been terminated for performance reasons and repeated, serious misconduct rendered him unfit for the position. Further, these officials had no knowledge of Burgett's protected status or that he previously engaged in protected conduct, thus they could not have been motivated by unlawful animus.

Burgett also cannot carry his burden of showing a similarly situated SSA job applicant received more favorable treatment. As Defendant observes, Burgett was previously terminated for performance issues and misconduct—a unique combination. And in the Eighth Circuit, "[T]he test for determining whether employees are similarly situated to a plaintiff is a rigorous one. To succeed in his claim, [a plaintiff] must show that he and the employee outside of his protected group were *similarly situated in all relevant respects*." *Henry v. Hobbs*, 824 F.3d 735, 739 (8th Cir. 2016) (emphasis added). In cases wherein a plaintiff alleges that his disciplinary history prevented him from getting hired while another applicant's disciplinary history was not an impediment, a plaintiff must show that the comparator applicant had a similar disciplinary history. *Cf. Roberts v. Cardinal Health*, 2006 WL 744270, at *9 (W.D. Mo. Mar. 20, 2006) (no substantial similarity because plaintiff "failed to prove that he and [a comparator] had comparable disciplinary histories").[5] In this case, there is no evidence of any other applicant for this position who had been previously terminated by the SSA for poor performance and misconduct being hired.

---

[5] In fact, some district courts go so far as to assert, "The quantity and quality of the comparator's misconduct must be 'nearly identical' to the plaintiff's so as to prevent courts from 'second-guessing employers' reasonable decisions and confusing apples with oranges.'" *Parris v. Keystone Foods, LLC*, 959 F. Supp. 2d 1291, 1305–06 (N.D. Ala. 2013) (applying an earlier Eleventh Circuit panel decision while recognizing that a later panel called into question). Even if a lesser degree of similarity is required, Burgett cannot meet that standard here.

8
Case 4:23-cv-00816-DGK    Document 29    Filed 08/04/25    Page 8 of 10

**B. Even if Plaintiff could establish a prima facie case, SSA has articulated a legitimate, nondiscriminatory reason for its action, and Burgett cannot establish a factual dispute as to pretext.**

Assuming for the sake of argument Burgett could establish a prima facie case, the SSA has met its burden of production of articulating a legitimate, nondiscriminatory reason for its failure to rehire him; namely, it previously terminated Burgett for poor performance and misconduct. *Id*. As the Supreme Court has noted, an employer's decision to not rehire a former employee who had been "terminated for violating workplace conduct rules" is "a quintessential legitimate, nondiscriminatory reason for refusing to rehire an employee." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 45 (2003). Thus, the burden shifts back to Burgett to show that SSA's reason was pretextual.

This he cannot do. To show a proffered justification is a pretext to hide illegal discrimination and retaliation, a plaintiff must

> present sufficient evidence to demonstrate *both* that the employer's articulated reason for the adverse employment action was false *and* that discrimination was the real reason . . . . [T]he plaintiff must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination.

*Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010) (emphasis added).

In this case, there is no "significant probative evidence" in the record indicating that the SSA's proffered reason was mere cover to hide race-plus-sex, race, or sex discrimination or retaliation. *Cf. Buettner v. Arch Coal Sales, Inc.*, 216 F.3d 707, 718 (8th Cir. 2000) ("A plaintiff facing a summary judgment motion cannot get to a jury without any significant probative evidence tending to support the complaint."). Burgett "must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer [discrimination and/or retaliation]." *Matthews v. Trilogy Communications, Inc.*, 143 F.3d 1160,

1165 (8th Cir. 1998). Under governing Eighth Circuit caselaw, Burgett's claims of discrimination and retaliation based on the SSA's declining to hire him in 2020 fail the *McDonnell Douglas* test. Consequently, this Court must grant summary judgment in Defendant SSA's favor.

Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

Date:  August 4, 2025   /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT