**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI**

**CHARLES L. BURGETT,**

**Plaintiff,**

**v.**

**FRANK BISIGNANO, COMMISSIONER SOCIAL SECURITY ADMINISTRATION**

**Defendant.**

**Case No. 4:23-CV-00816-DGK**

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT

**COMES NOW**, Plaintiff, Charles L. Burgett (Mr. Burgett), requests that the court reconsider the summary judgment entered against him, as authorized by Federal Rule of Civil Procedure 59(e).

### A. INTRODUCTION

The judge Greg Kays court granted defendant's motion for summary judgment (Doc. 29), and the clerk entered judgment (Doc. 31) on August 4, 2025.

Mr. Burgett files this motion for reconsideration and asks the court to **VACATE** the summary judgment.

### B. PERSONAL BIAS AND PREJUDICE

The Kays court's order and the judgment therefrom are grounded in bias and prejudice against Mr. Burgett; and are predicated under the influence of passion for the SSA and its counsel. The Kays court's biased and prejudiced actions against Mr. Burgett; and, its influence of passion for and unwavering support of the SSA and its counsel is evident by its unjust orders (e.g. Doc. 3, Doc. 13, Doc. 25, Doc. 30) against Mr. Burgett. The Kays court is required to adhere to ethical standards of the judiciary including not to engage in incorrectness and the appearance of incorrectness—not to engage in prejudice against Mr. Burgett, in favor of the SSA and its attorneys. Further, the Kays court is obligated to administer equal justice regardless of, *inter alia*, Mr. Burgett's Race-Sex (African-Male), Race (African) and *Pro Se* Status.

In *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980), the Supreme Court recognized that the "requirement of neutrality in adjudicative proceedings" serves dual interests of equal importance, as "it preserves both the appearance and reality of fairness, `generating the feeling, so important to a popular government, that justice has been done,' by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him."

## C. ARGUMENT

As established by Mr. Burgett *Infra*, the Kays court committed a clear error of law and fact; and, the Kays court's order results in manifest injustice. *Ira Green, Inc. v. Military Sales & Service Company*, 775 F.3d 12, 28 (1st Cir. 2014).

The Kays court's order and the judgment therefrom contains a clear error of law and fact, and reconsideration is necessary to prevent manifest injustice. *Russell v. Delco Remy*, 51 F.3d 746, 749 (7th Cir. 1995); *Collision v. International Chem. Workers Un. Local 217*, 34 F.3d 233, 236 (4th Cir. 1994); *Norman v. Arkansas Dept. of Educ.*, 79 F.3d 748, 750 (8th Cir. 1996).

### Clear Error of Fact

Mr. Burgett asserts that he was subjected to discrimination based on his Race/Sex (African Male), Race (African[1]), Sex (Male), and retaliation for prior participation in EEO protected activity, when on October 20, 2020, the SSA after initially selecting Mr. Burgett for a Debtor Contact Representative position, rescinded the selection; and, did not hire him (Doc. 5, at ¶ 14).

[1] The Kays court purports, "Because the relevant case law [unnamed] and underlying EEO documents generally use the descriptor "African American," the Court will use the term "African American" in this order . . . for consistency with reported precedent (Order, at 2)." Regarding, Mr. Burgett, the EEO Files consistently refer to Mr. Burgett's Race as, "**African**"; and, it is a fact that Mr. Burgett filed all of his administrative complaints and this lawsuit is **based on**, *inter alia*, his **Race** (**African**) (Doc. 23-1, Exhibit A; Doc. 23-11, Exhibit K; Doc. 23-17, Exhibit Q; Doc. 5). Despite the purported reasons by the Kays court for using the foregoing labeling term, this attitude toward Mr. Burgett as an African man is akin to what Chief Justice Roger Brooke Taney wrote, which is considered to be the majority of the Supreme Court's opinion—"they [Negroes] had no rights which the white [european] man was bound to respect (Dred Scott v. Sandford (March 6, 1857))."

**Mr. Burgett's prior employment with the Social Security Administration in 2016**

**- - Order, at 2-4 - -**

**The Kays court improperly and totally disregarded Mr. Burgett's STATEMENT OF ADDITIONAL MATERIAL FACTS (Doc. 27, at ¶¶ 34-56), including:**

¶ 41. Hawkins claimed that Mr. Burgett was terminated because he did not bring his production level up to 3.0. Doc. 23-5, Exhibit E, at ¶ 39.

¶ 42. For the period between November 14, 2016 and November 29, 2016, Mr. Burgett's cases per day rate was 3.70, which exceeded the rate of 3.0 set by Monica Hawkins. Exhibit 2, at Questions 37, 39, P. 2; Id., at Question 35, P. 3.

¶ 43. On August 26, 2016, Hawkins emailed Mr. Burgett a directive to work four cases under the same Social Security Number (4 SSNXs). Exhibit 3, ¶ 9a; Doc. 23-8, Exhibit H.

¶ 46. Regarding SSNX 60139—On August 27, 2016, Senior Claims Processing Specialist (SCPS), Marty Sanchez reviewed the case—On August 30, 2016, Mr. Burgett informed Sanchez that case had already been worked—On August 31, 2016, Sanchez reviewed the case—On September 1, 2016, the case was completed [Function Station FIN FIN]. Exhibit 2, at P. 7, PP. 5-7.

¶ 47. In regards to SSNX 60374, SSNX 60239, and SSNX 60439—From August 31, 2016 to September 12, 2016, Sanchez and Mr. Burgett were actively communicating and Sanchez was guiding Mr. Burgett on the correct method to process the three related SSNXs (cases). Exhibit 2, at Questions 13, 14, P. 1. Id., PP. at 5-6, 8-10.

¶ 49. Regarding SSNX 60374, the case was completed on September 9, 2016. [Function Station FIN FIN]. Exhibit 2, at P. 8, PP. 5-8.

¶ 50. In regards to SSNX 60239, and SSNX 60439—On September 12, 2016, Sanchez annotated the cases "ok" to release". Exhibit 2, at P. 6, PP 9-10.

¶ 51. As of September 12, 2016, the case (SSNX 60139) and the three related cases (SSNX 60374, SSNX 60239, and SSNX 60439) were completely processed. Exhibit 2, at Questions 13, 14, P. 1; Id., at PP. 5-10.

**The SSA does not dispute Mr. Burgett's additional facts (Doc. 28, at ¶¶ 34-56). The facts are deemed admitted for the purpose of summary judgment. Local Rule 56.1(c).**

**Mr. Burgett's non-selection by the SSA for Debt Contact Representative in 2020**

**- - Order, at 4-6 - -**

**The Kays court improperly accepted as true,** "The applicant [Mr. Burgett] [allegedly] "engaged in misconduct in prior employment" (Doc. 23, ¶ 24; Doc. 23 23-13, Exhibit M, at ¶ 16)." **Mr. Burgett DISPUTED the same.**

**The Kays court also improperly accepted as true,** that "[Mr. Burgett had] [allegedly] engaged in repeated, serious misconduct that resulted in formal discipline [and Burgett] was terminated by the agency during his probationary for both unsuccessful performance and repeated, serious misconduct." **Mr. Burgett DISPUTED the foregoing.** Doc. 27, ¶ 25, Exhibit 1, at ¶¶ 4a, 6a; Exhibit 2, at Questions 13, 14, 17, P. 1; Id., at Questions 30, 37, 39, P. 2; Id., at Questions 13, 14, 20, 35, 36, P. 3; Id., at PP. 5-10; Exhibit 3, at ¶¶ 9a, 11a, PP. 2-4; Id., PP. 7-9, 15-17.

**The Kays court omitted** that based on Mr. Burgett's name, Hunter assumed that Mr. Burgett was male. (Doc. 23, ¶ 27).

**The Kays court improperly and totally ignored Mr. Burgett's STATEMENT OF ADDITIONAL MATERIAL FACTS (Doc. 27, at ¶¶ 57-62), including:**

¶ 58. Ochoa was aware of Mr. Burgett's Race, Sex, and prior EEO protected activity in 2015 and received litigation holds and preservation notices from the agency Office of the General Counsel (OGC) in connection with previous cases filed in 2015 and 2018. SWORN STATEMENT OF ANGELA OCHOA, Doc. 23-14, Exhibit N, at ¶¶ 6, 7, 8, 12; SWORN AFFIDAVIT OF ANGELA OCHOA, Exhibit 9.

¶ 59. Ochoa made the ultimate decision to rescind Mr. Burgett's job offer. Doc. 23-14, Exhibit N, at ¶ 12; ANSWER TO INTERROGATORY NO. 9, Exhibit 5, at P. 2.

¶ 60. Ochoa did not rescind any other applicant's job offer except Mr. Burgett's job offer. Doc. 23-14, Exhibit N, at ¶ 12; ANSWER TO INTERROGATORY NO. 9, Exhibit 5, at P. 2; ANSWER TO INTERROGATORY NO. 11, Exhibit 5, at P. 2.

**The SSA does not dispute Mr. Burgett's additional facts (Doc. 28, at ¶¶ 57-62). The facts are deemed admitted for the purpose of summary judgment. Local Rule 56.1(c).**

**Clear Error of Law**

**The Kays court grant of summary judgment is improper in this case because there are genuine issues as to material fact in dispute and genuine issues as to the credibility of witnesses. For example,** the material cited by the SSA (Doc. 23, ¶¶ 24, 25) does not establish the absence of a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325 (1986). **The SSA is not entitled to judgment as a matter of law.**

**The Kays court did not view the facts in the light most favorable to Mr. Burgett and did not draw all reasonable inferences in Mr. Burgett's favor; The Kays court made credibility determinations and weighed the evidence in favor of the SSA. All of which is in violation of law.** *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 150 (2000) *Lytle v. Household Mfg., Inc.*, 494 U. S. 545, 554–555 (1990); *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).*

**The Kays court should have reviewed the record as a whole, and it did not disregard the evidence favorable to the SSA that the jury is not required to believe.** Because the SSA's evidence is contradicted, and comes from interested witnesses, it cannot be credited unless it is favorable to the Mr. Burgett. *Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure, §2529 (2d Ed. 1995) at 300.*

When the disputed issue turns on a question of motive and intent "jury judgments about credibility are typically thought to be of special importance." *Woodman v. Haemonetics Corp.,51 F.3d 1087, 1091 (1st Cir. 1995)* ("No credibility assessment may be resolved in favor of the party seeking summary judgment."); see also, *Poller v. Columbia Broad. Sys., 368 U.S. 464, 473(1962)* ("summary judgment procedures should be used sparingly . . . where the issues of motive and intent play leading roles"); *Pullman-Standard v. Swint, et al., 456 U.S. 273, 288-90 (1982)*(discriminatory intent is a factual matter for the trier of fact).

**Credibility of the witnesses raises a factual dispute, which the Kays court cannot weigh. The Kays court did not review the record as a whole and improperly made credibility determinations on a paper record in favor of the SSA. Credibility determinations, or attempt to determine the truth of the matter are for the jury not the Kays court.** *Poller v. Columbia Broad. Sys., 368 U.S. 464, 473(1962); Pullman-Standard v. Swint, et al.,* 456 U.S. 273, 288-90 (1982); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Garrett v. Embrey, et al*, Case No. 4:17-cv-02492-PLC (United States District Court, E.D. Missouri, October 25, 2018); *Quick v. Donaldson, 90 F.3d 1372, 1376-77(8th Cir. 1996).*



Case 4:23-cv-00816-DGK Document 32 Filed 08/27/25 Page 5 of 9

**- - Order, at 7-8 - -**

**The Kays court improperly made a credibility determination** that [allegedly], "the record demonstrates [Mr. Burgett] was not hired because SSA hiring officials deemed the fact that he had previously been terminated for performance reasons and repeated, serious misconduct rendered him unfit for the position. It is indisputable that the facts in the record establish that Mr. Burgett's previous terminated was neither for performance reasons nor for repeated, serious misconduct. **The Kays court improperly made a credibility determination, which is forbidden by law, and bars summary judgment.**

**The Kays court clearly erred and drew an erroneous conclusion by claiming,** "these officials had no knowledge of Burgett's protected status or that he previously engaged in protected conduct, thus they could not have been motivated by unlawful animus." It is indisputable that the facts in the record establish that Ochoa was aware of Mr. Burgett's Race, Sex, and prior EEO protected activity and made the ultimate decision to rescind Mr. Burgett's job offer. Regarding Hunter, the record shows that he assumed that Mr. Burgett was male; and, *inter alia*, Hunter worked under Ochoa as his supervisor—there is an obvious inference that Hunter was aware of Mr. Burgett's Race and prior EEO protected activity as well. **Whether Hunter was or was not aware of Mr. Burgett's protected status requires a credibility determination for the jury to decide NOT the Kays court. Notwithstanding, Ochoa made the ultimate decision to rescind Mr. Burgett's job offer.**

**The Kays court misused the similarly situated concept—This is not a case, "wherein [Mr. Burgett] alleges that his disciplinary history prevented him from getting hired while another applicant's disciplinary history was not an impediment"; and, based on an erroneous premise, wrongly concluded, "[i]n this case, there is no evidence of any other applicant for this position who had been previously terminated by the SSA for poor performance and misconduct being hired."**

It is indisputable that the facts in the record establish that Mr. Burgett's has no disciplinary history. The evidence in the record shows that similarly situated applicants, not part of Mr. Burgett's protected groups, received more favorable treatment by being hired instead of him. **Whether Mr. Burgett and the hired applicants are or are not similarly situated is question of credibility for the jury to decide.**

Notwithstanding, **the Kays court flagrantly abused its discretion by not compelling the SSA to supplement its discovery responses by providing Mr. Burgett full and complete discovery responses, including disciplinary histories (Declaration for Federal Employment (OF 306)) of the hired applicants.** The Kays court seems to justify its flagrant abuse of discretion by inferring that Mr. Burgett untimely requested an extension of the discovery deadline (Doc. 25) but ignored the SSA's continuous duty under FRCP 26(e) to supplement its discovery responses. In addition, it is apparent that the Kays court considers a timely ruling or otherwise on Mr. Burgett's other motions (Doc. 22-filed on April 14, 2025; Doc. 26-filed on May 19, 2025) as unimportant. On August 4, 2025 [112 days and 77 days later respectively], the Kays court found Mr. Burgett's motions are purportedly moot because it granted the SSA's motion for summary judgment (Doc. 30). The motions are not moot, rather the Kays court just disregarded them. The fact remains that Mr. Burgett's case is **not** for a Social Security disability appeal; and, the SSA-Office of General Counsel (Ssaogcomms Ssaogcomms) is not and was not the proper representative for the SSA; and should not have been or now be receiving any documents from the court regarding Mr. Burgett's case. Jeffrey P . Ray, United Assistant U.S. Attorney Ray is the **only** proper representative for the SSA. The court should remove the SSA-Office of General Counsel as defendant's **second** representative.

**- - Order, at 9-10 - -**

The Kays court tacitly admits and the SSA does not dispute that Mr. Burgett established the elements of his *prima facie* cases of discrimination and retaliation. Notwithstanding, the Kays court purports that the SSA articulated a so-called legitimate, nondiscriminatory reason for its failure to rehire Mr. Burgett, to wit: "it previously terminated Burgett [allegedly] for poor performance and misconduct." It is indisputable that the facts in the record establish that Mr. Burgett's previous termination was neither for poor performance nor for misconduct. However, the SSA used this same false reason to not rehire Mr. Burgett. The SSA's reliance on this false premise led to a flawed conclusion in respect to Mr. Burgett's suitability for rehire. **The SSA's reason for its failure to rehire Mr. Burgett is merely pretext to mask discrimination and retaliation.**

**Manifest Injustice**

The previous decision (4:20-CV-0036-DGK) is egregiously wrong, and it shows that the Kays court has a predisposition to support the SSA's discriminatory and retaliatory animus toward Mr. Burgett and rule against him. Id., at Doc. 58. This case was transferred to the Kays court, which allowed it to continue the foregoing pattern and practice in this case, as demonstrated by the bias grant of summary judgment. The transfer of the case to the Kays court violated the Due Process Clause of the U.S. Constitution, which entitles Mr. Burgett to an impartial and disinterested tribunal in all cases. The personal bias and prejudice of the Kays court deprived Mr. Burgett of fair proceedings in violation of the Due Process Clause. Mr. Burgett should have been given the opportunity to have this case adjudicated, through fresh eyes, by the prior assigned judge, who may have upheld the judicial oath to "administer [Equal Justice Under Law], and . . . faithfully and impartially discharge and perform all the duties [obligated] upon [him]."

The evidence in the record clearly shows that Mr. Burgett proved a *Prima facie* case; and, that he established Pretext. The ultimate inference of the SSA's discriminatory and retaliatory motive should be made at trial, and drawing that ultimate inference from the evidence is the function of the jury, **NOT** the Kays court.

**It is indisputable that** Mr. Burgett **did not** engage in misconduct **nor was** his performance unsuccessful during his previous employment with the SSA. Any claim by the SSA to the contrary is patently false. In turn, the SSA articulated a so-called legitimate, nondiscriminatory reason for its failure to rehire Mr. Burgett, to wit: "it previously terminated Burgett [allegedly] for poor performance and misconduct[]" is patently false as well. The SSA made false accusations of poor performance and misconduct to justify terminating Mr. Burgett when its true motive was discriminatory and retaliatory.

**It is indisputable that** Ochoa became aware of Mr. Burgett's Race, Sex, and prior EEO protected activity in 2015 and made the ultimate decision to rescind Mr. Burgett's job offer based on the absolute false premise that Mr. Burgett had previously engaged in misconduct and poor performance.

The error made by the Kays court is apparent to the point of being indisputable; and, the error made by the Kays court amounts to a complete disregard of the controlling law and the credible evidence in the record. Any honest person who views the record will see that the Kays court is engaging in extreme unfairness and is contaminated with bias against Mr. Burgett.

The Kays court's reliance on the testimony of interested and biased SSA witnesses contained in the paper record; and, for it to act on the SSA's version of facts that a jury is not required to believe, poses a clear threat to Mr. Burgett's Constitutional right to a jury trial. The Kays court is infringing on Mr. Burgett's right to a jury trial afforded to him by the Seventh Amendment of the United States Constitution, which provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." The Kays court's consideration of, and reliance on, the self-serving testimony and affidavits of SSA's own agents, which a jury would be free to disbelieve in their entirety, deviates so extensively from the common law notion of the right to a jury trial as to demonstrate a Constitutional violation.

## D. CONCLUSION

For the above stated reason, Mr. Burgett requests the court **GRANT** his motion for reconsideration of summary judgment and moves the court to **VACATE** the order, **REVERSE** judgment, and allow him to continue prosecution of his case.

Dated: August 25, 2025

Submitted,

Charles L. Burgett

Charles L. Burgett, Plaintiff *Pro se*
P.O. Box 24826
Kansas City, Missouri 64131
(816) 521-0339